CJ-19-4127
Prince

FILED IN DISTRICT COURT OKLAHOMA COUNTY

JUL 24 2019

RICK WARREN
COURT CLERK

48_____

IN AND FOR THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

DMITRY SMIRNOV, AMALAN MARIE )
BERTHE KADJA, and SIMON MATHEMA )
Plaintiffs, )
)
)
v. )  Case No. CJ-2019- 4127
)  The Honorable Prince
THE OKLAHOMA BAPTIST UNIVERSITY, )
)
Defendant )

## PETITION

Plaintiffs, Dmitry Smirnov ("Smirnov"), Amalan Marie Berthe Kadja ("Kadja"), and Simon Mathema ("Mathema") (hereinafter collectively referred to as "Plaintiffs"), for their Petition against the Defendant, The Oklahoma Baptist University ("Defendant"), allege and state as follows:

### JURISDICTION AND VENUE

1. Plaintiffs are each, individually, foreign residents of the State of Oklahoma. Smirnov currently resides in Oklahoma County, State of Oklahoma. Kadja currently resides in Oklahoma County, State of Oklahoma, and Mathema currently resides in Payne County, State of Oklahoma.

2. Defendant is a corporation organized under the laws of the State of Oklahoma, with its principal place of business in Shawnee, State of Oklahoma.

3. Moreover, Defendant maintains a satellite campus with student classrooms in Oklahoma City, State of Oklahoma at which Plaintiffs attended classes.

4. Plaintiffs each completed their coursework while students enrolled at Defendant, in its Oklahoma City, State of Oklahoma, satellite campus.

5. Upon information and belief, officers, directors and shareholders of Defendant reside in Oklahoma County, State of Oklahoma.

1


EXHIBIT 1

6. This Court has general subject matter jurisdiction over this dispute pursuant to 12 O.S. § 2004(F)

7. Venue is appropriate in this Court pursuant to 12 O.S. § 134.

## FACTUAL BACKGROUND

8. Plaintiffs are each, individually, foreign nationals who are currently residing in the United States pursuant to valid visas.

9. As foreign nationals, Plaintiffs were required to obtain the necessary visas and satisfy specific enrollment criteria in order to become enrolled in an American educational institution.

10. The United States' Department of Homeland Security ("DHS") oversees the Federal Student and Exchange Visitor Program ("SEVP") whereby foreign nationals may come to the United States to attend school.

11. Each educational institution seeking to participate in the SEVP is required to become certified through DHS. Defendant is so certified.

12. As a certified educational institution, Defendant is empowered to issue a Form I-20, "Certificate of Eligibility for Nonimmigrant Student Status," to nonimmigrant foreign nationals desiring to attend school at that institution.

13. Each student participating in SEVP is assigned a Classification of Instruction Program ("CIP") which sets forth the course of study and is utilized by DHS to determine the student's eligibility to participate in SEVP and to remain in the United States pursuant to their applicable visas.

14. All available CIPs are published by DHS for each educational institution to review, along with the applicable criteria for each distinct CIP so that the institution can then classify each course of study offered to its students participating in SEVP.

15. Importantly, the CIP assigned by each school determines, among other things, each student's ability to extend the length of their visas through the United States Citizenship and Immigration Services' Optional Practical Training ("OPT") period.

16. Generally, any student present in the United States through SEVP is permitted twelve (12) months of permissive OPT following their matriculation from their course of study at an educational institution. During this one (1) year OPT period, the student visa-holder may be employed in the United States obtaining practical experience and training to complement their education.

17. Students participating in an SEVP that possesses a CIP code in the field of Science, Technology, Engineering, or Mathematics ("STEM"), qualify for a twenty-four (24) month extension of this OPT period that is not available to students in non-STEM fields.

18. Thus, CIP's within a STEM field provide not only longer student visas, but permit more time for these students to obtain the necessary experience to qualify for and obtain an H1-B work visa, if applicable, or otherwise work towards obtaining status as an immigrant to the United States.

## PLAINTIFFS' RELATIONSHIP WITH DEFENDANT

19. Plaintiffs each met one another while enrolled together through SEVP in the University of Central Oklahoma's ("UCO") General Business Administration and Management ("General Business") Master's program.

20. This General Business Master's program carried a CIP code of 52.0201 – a non-STEM designation.

21. Plaintiffs were each dissatisfied with their course of study at UCO and did not feel that they were obtaining experience which would assist in the development of their careers as they had initially hoped. Accordingly, Plaintiffs collectively looked for an alternative course of study within

their area of interest and expertise that would warrant the ongoing significant investment in their education.

22. During his research, Smirnov identified a graduate course of study offered by Defendant which interested him. Defendant offered a Masters in Business Administration ("MBA") with a specialty in Energy Management, which carried a STEM-qualified CIP code: 15.0503.

23. Dmitry advised Kadja and Mathema of Defendant's course of study, and each applied for enrollment therein.

24. Defendant's classification of the Energy Management MBA Program as qualifying for a STEM-designation was a principal and determinative reason for enrollment with Defendant.

25. The CIP classification of this Energy Management MBA Program was of such significance to Plaintiffs that they sought clarification directly from the Defendant that this program carried a STEM designation.

26. Defendant confirmed to Plaintiffs that the Energy Management MBA Program was indeed classified as a STEM program.

27. This designation thus qualified Plaintiffs for a lengthier OPT period in the United States, permitted them additional options for obtaining a work visa, and added further value as it was a distinct degree from that which they earned from educational institutions in their home countries.

28. Plaintiffs each paid to Defendant tens of thousands of dollars in tuition and fees throughout the course of their study.

29. During the entirety of this time period, Defendant issued them Form I-20's with a STEM-qualified CIP designation of 15.0503.

30. Plaintiffs graduated in December of 2017 from Defendant with an MBA in Energy Management, and each believed themselves qualified to obtain the twenty-four (24) month

4

extension of their OPT period on account of holding a degree in a STEM field as represented by their school, its administrators, their professors, and their classmates.

31. Plaintiff began searching for employment in this field, and Smirnov even received an offer of employment at an Oklahoma oil and gas company following a rigorous and competitive employment process. This position entitled him to an H1-B work visa.

32. Months after graduation, Plaintiffs received a notification in the mail, without explanation or additional detail, that they would be promptly receiving a new Form I-20.

33. Defendant issued each of the Plaintiffs a new Form I-20 that contemplated an entirely new degree and CIP code – MBA in General Business Administration, CIP: 52.0201, the same program that had led each of them to terminate their enrollment at UCO and obtain an I-20 transfer to Defendant.

34. Defendant ultimately explained that its MBA Energy Management Program never qualified for the STEM based CIP that it had represented to Plaintiffs and that it was an error to have ever identified it as such to Plaintiffs.

35. Plaintiffs each incurred thirty (30) or more credit hours of instruction from Defendant at more than $450.00/credit hour, towards a degree that was later taken from them on account of Defendant's own misrepresentations.

36. Plaintiffs each expended tens of thousands of dollars and hundreds of hours of time over the course of three (3) semesters to obtain a degree that would have opened up countless opportunities for them. They traveled from another hemisphere in order to study at Defendant's graduate school with the specific expectation of certain benefits.

37. As a consequence of Defendant's actions and omissions, they've each been put in a position where they will not qualify to obtain employment and accompanying work visas in their desired

field and may not seek an extension of their OPT in order to remain in the United States to obtain further experience for an additional two (2) years. Defendant has shamelessly and unapologetically taken their money, time, energy, dignity, and dreams.

38. In response to these complaints, Defendant informed Plaintiffs that their predicament was brought about through their own fault for having ever believed and relied upon Defendant's multiple and continuing "obvious" misrepresentations.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

39. Plaintiffs adopt and incorporate numerical paragraphs 1 through 37 of their Petition against Defendant as if said allegations were set re-asserted fully and completely herein.

40. Upon enrollment with Defendant, a contract was established between Plaintiffs and Defendant wherein Defendant was obligated to bestow upon Plaintiff a specified degree upon the satisfaction of each of Defendant's prerequisite requirements for matriculation.

41. Each of Plaintiffs completed all necessary pre-requisites for matriculation with the degree under which they were enrolled with Defendant, as set forth by Defendant.

42. Nonetheless, Defendant failed to convey that degree to Plaintiffs.

43. Defendants failure serves as a breach of its contract with Plaintiffs.

44. As a direct result of Defendant's material breach and violation of this agreement, Plaintiffs have each suffered damages in an amount in excess of $75,000.00. Plaintiffs pray that this Court enters judgment in their favor for their damages, along with all of their costs, expenses, and reasonable attorney's fees incurred in connection therewith.

## SECOND CAUSE OF ACTION: NEGLIGENCE

45. Plaintiffs adopt and incorporate numerical paragraphs 1 through 43 of their Petition against Defendant as if said allegations were set re-asserted fully and completely herein.

46. Throughout the course of dealings of the parties, Defendant possessed an obligation to exercise reasonable care to ensure that injury and damages did not befall Plaintiffs.

47. Defendant failed to exercise reasonable care in its dealings with Plaintiffs in several particulars, including, but certainly not limited to, its self-acknowledged misrepresentation of the CIP classification of its MBA Energy Management Program and its misrepresentations to Plaintiffs of the program's validity and the benefits of same.

48. Plaintiffs were each injured a direct result thereof.

49. Defendant's conduct is so egregious as to warrant the imposition of punitive damages.

50. As a direct result of Defendant's material breach and violation of its legal obligations to Plaintiffs, Plaintiffs have suffered damages in an amount in excess of $75,000.00, and pray that this Court enters judgment in their favor for their damages, along with punitive damages in an amount in excess of $75,000.00, along with their costs, expenses, and reasonable attorney's fees incurred in connection therewith.

### THIRD CAUSE OF ACTION: UNJUST ENRICHMENT

51. Plaintiffs adopt and incorporate numerical paragraphs 1 through 48 of their Petition against Defendant as if said allegations were set re-asserted fully and completely herein.

52. Throughout the course of their dealings, Defendant leveraged Plaintiffs desire for a STEM-qualified degree in order to obtain tuition and other fees from Plaintiffs.

53. Tens of thousands of dollars were paid to Defendant by Plaintiffs in exchange for a degree which Plaintiffs were never provided and which some of them already possessed at other educational institutions in their respective home country.

54. Defendant plainly benefitted from Plaintiffs' presence at the University, engagement with fellow students, and importantly, their tuition dollars.

55. Upon Plaintiffs' matriculation, Defendant withheld property acquired, earned, and paid for by Plaintiffs, and further withheld the benefits of Plaintiffs' investment in such property.

56. Defendant was unjustly enriched through its deceitful actions.

57. Defendant's enrichment was obtained at the financial expense, and to the unjust detriment of, Plaintiffs.

58. As a direct result of Defendant's material breach and violations of its obligations to Plaintiffs, Defendant has been unjustly enriched at Plaintiffs' direct expense in an amount in excess of $75,000.00. Accordingly, Plaintiffs pray that this Court enter judgment in their favor for their damages along with their costs, expenses, and reasonable attorney's fees incurred in connection therewith.

## FOURTH CAUSE OF ACTION: FRAUD

59. Plaintiffs adopt and incorporate numerical paragraphs 1 through 57 of their Petition against Defendant as if said allegations were set forth and re-asserted fully and completely herein.

60. Defendant made a number of material misrepresentations and material omissions concerning the character of the educational degree program Plaintiffs were enrolling in, the degree which would be conferred upon Plaintiffs, and the classification of such degree program with the DHS for purposes of determining Plaintiffs' eligibility for certain rights and privileges as nonimmigrant students and prospective immigrants to the United States as set forth in greater detail in the factual allegations set forth and incorporated by reference above.

61. Defendant knew, or reasonably should have known if it did not carry on its business with such careless and reckless disregard for the rights of its students, that the misrepresentations were indeed false statements at the time they were made.

62. These material false statements were made with the understanding, if not the specific intent, that Plaintiffs engage in an action, e.g., enrollment with Defendant, to their detriment, and Defendant's financial benefit.

63. Plaintiffs reasonably relied upon these misrepresentations and false statements in the taking of said action that was ultimately found to be to their serious detriment.

64. Plaintiffs were each directly and materially injured as a direct result of the foregoing misrepresentations and resulting reliance thereon.

65. As a direct result of Defendant's material misrepresentations to Plaintiffs and their resulting reliance thereon, Plaintiffs have each suffered damages in an amount in excess of $75,000.00, and pray that this Court enter judgment in their favor for their damages along with their costs, expenses, and reasonable attorney's fees incurred in connection therewith.

FIFTH CAUSE OF ACTION: CONSTRUCTIVE FRAUD/NEGLIGENT MISREPRESENTATION

66. Plaintiffs adopt and incorporate numerical paragraphs 1 through 64 of their Petition against Defendant as if said allegations were set forth and re-asserted fully and completely herein.

67. Defendant made a number of material misrepresentations and material omissions concerning the character of the educational degree program Plaintiffs were enrolling in, the degree which would be conferred upon Plaintiffs, and the classification of such degree program with the DHS for purposes of determining Plaintiffs' eligibility for certain rights and privileges as nonimmigrant students and prospective immigrants to the United States as set forth in greater detail in the factual allegations set forth and incorporated by reference above.

68. These misrepresentations were material and instrumental in Plaintiffs decisions to proceed with enrollment and matriculation at Defendant in the course of study in which they ultimately graduated while enrolled in, a MBA in Energy Management.

9

69.  Defendant failed to exercise reasonable care in issuing the material misrepresentations and omissions to Plaintiff, such that if such care had been exercised, the misrepresentations and omissions may have been corrected and Plaintiffs would not have been led so far astray.

70.  Plaintiffs reasonably relied upon these statements in the taking of said action that was ultimately found to be to their serious detriment.

71.  Plaintiffs were each directly and materially injured as a direct result of the foregoing misrepresentations and resulting reliance thereon.

72.  As a direct result of Defendant's material misrepresentations to Plaintiffs and their resulting reliance thereon, Plaintiffs have each suffered damages in an amount in excess of $75,000.00, and pray that this Court enter judgment in their favor for their damages along with their costs, expenses, and reasonable attorney's fees incurred in connection therewith.

WHEREFORE, in consideration of the foregoing, Plaintiffs, Dmitry Smirnov, Amalan Marie Berthe Kadja, and Simon Mathema, pray that the Court enters judgment in their favor with respect to each of the above causes of action against Defendant, The Oklahoma Baptist University, such that Plaintiffs recover their damages incurred as a result of the wrongful conduct of Defendant in an amount in excess of $75,000.00, along with their reasonable costs, expenses, and attorney's fees incurred in the prosecution of these claims, and that an example be made of Defendant such that no other unsuspecting students ever fall victim to its administration's apathy towards the critical concerns and dreams of its students.

Respectfully submitted,

*/s/ Justin R. Williams*
Justin R. Williams, OBA No. 32539
Weston O. Watts, OBA No. 33299
OVERMAN LEGAL GROUP, PLLC.
809 NW 36th Street
Oklahoma City, Oklahoma 73118
Telephone:    405-605-6718
Facsimile:     405-605-6719
Email: justinwilliams@overmanlegal.com
          westonwatts@overmanlegal.com
ATTORNEYS FOR Plaintiffs

**JURY TRIAL DEMANDED**
**ATTORNEYS LIEN CLAIMED**